## Simpson, et al. v. Simpson's Executrix, et al.

(Decided November 16, 1920.)

### Appeal from Jessamine Circuit Court.

1.   Wills—Intention of Testator.—To arrive at the meaning of a will, the intention of the testator must be ascertained from the instrument as a whole. If it is explicit and the meaning of the language is involved in no obscurity, rules of construction meant to eluci-

date and to which the courts are often compelled to resort, cannot be employed.

2. Wills—Powers—Construction.—Where a will bequeathed all the testator's personal property to his widow "absolutely," and devised her a life estate in the whole of his real property, with remainder therein at her death to five of his six sons and the children of the sixth son, designating by description a particular tract of land to go at the death of the life tenant to each of the five sons and children of the sixth son; and by a subsequent clause of the will an additional tract of land of 133 acres was designated which the widow as executrix of the will was empowered to sell and convey, if necessary to pay the testator's debts, unless she should, upon the advice of the testator's children, desire to hold the land and make other suitable arrangements for the payment of the debts. Held, that the exercise of the power thus conferred on the executrix to sell the designated land for the purpose indicated, or to retain it, was left by the will to her discretion guided by the advice of the testator's six sons; therefore, a sale of the land by the executrix to one of the testator's sons for the payment of his debts, made on the advice of the five other sons and by their joining with her in the deed of conveyance, vested in the purchaser a valid title to the land.

EMMET V. PURYEAR for appellants.

EVERETT B. HOOVER for appellees.

Opinion of the Court by Judge Settle—Affirming.

William Simpson, a resident of Jessamine county this state, died in 1915, testate, survived by his widow, Amanda H. Simpson, and their six sons, viz.: James L., John W., Cleveland W., Paul G., Robert F., and J. Weldon Simpson. He owned at the time of his death 897½ acres of valuable blue grass land situated in Jessamine county and also some personal property, all disposed of by his will, which was executed December 5, 1912, and after his death duly admitted to probate by the Jessamine county court. At the same time the testator's widow, named in the will as executrix thereof without security, was appointed and duly qualified as such. The will (omitting the opening statement giving the name of the testator, affirming his testamentary capacity and declaring the testamentary character of the instrument, also the boundaries of the several tracts of land therein devised) is as follows:

"1st. It is my wish that all my debts and funeral expenses be paid by my executrix hereinafter named, as soon after her qualification as practicable.

"2nd. I give unto my beloved wife, Amanda H. Simpson, all of my personal property (of) whatever it may consist, absolutely.

"3rd. I give unto my said wife all of my real estate, wherever it may be, for and during her natural life and after her death, I give to my children as herein specified. . . ."

Following the above provisions of the will, are devises to the sons of the testator, respectively, save John Simpson, of such part of the remainder in his lands as he intended each to take at the death of the widow, each devise embracing about 133 acres, particularly bounded and described. Instead, however, of making to his son John Simpson a devise of any part of the remainder in his lands, the testator by the ninth clause of his will devised to the children of John a share of the lands in remainder, equal in value to the share devised each of the latter's brothers. The clause of the will containing the devise to the children of John Simpson is as follows:

"9th. To the children of my son, John Simpson, I devise that tract of land lying in Jessamine county, Ky., on the Lexington and Harrodsburg pike and bounded as follows: . . . But it is understood that my son, John Simpson, is to have the use and control and management of said land so long as he lives for the support of himself and wife and children. But should he fail to so use and manage said land in such manner as to earn a proper support for his said family, then upon the application of his said children, to the Jessamine county court, said court is hereby authorized and empowered to appoint a trustee who shall take possession of and control and manage said land in the place and instead of said John Simpson, for the use and benefit of his said children. It is further my will that in case any of the children of my said son, John Simpson, should die, leaving no child or children surviving them, the interest of such child shall descend to and vest in its surviving brothers and sisters. All of said devises to my children and grandchildren it is understood are made subject to the life estate of my said wife, Amanda H. Simpson.

"10th. There remains about 133 acres of land that I have not disposed of under this will. As to this land, I hereby empower my executrix hereinafter named, to sell and convey should it be necessary for the purpose of paying my debts and funeral expenses, and such other charges as may be against my estate. But should she upon

the advice of my children desire to hold said land and to make other suitable arrangements for the payment of said demands against my estate, she is at liberty to do so. In such event upon the death of my said wife, said land is to be equally divided amongst my sons, James L. Simpson, Cleveland, Paul, Robert and the children of my son, John Simpson; said children collectively taking one share therein. If any of the devisees under this will shall attempt to set it aside, he shall forever forfeit all interest in my estate and all the benefits under this will.

"11th. I hereby nominate and appoint my wife, Amanda H. Simpson, executrix of this my last will and testament and request the court not to require any security of her as such."

Shortly before his death the testator added to the above will a codicil respecting advancements of money made certain of his sons, to be charged to them, respectively, in a final settlement of the estate after the death of the widow, but as this codicil does not affect the questions we are to consider, it will not be copied in the opinion.

Following her qualification as executrix of the will, the widow of the testator, as such and in her own right as devisee, took possession of the real and personal estate devised, and later sold at an adequate price to Weldon Simpson, one of the sons and a devisee under the will, to discharge the debts of the testator, the 133 acres of land set apart by the 10th clause thereof for that purpose, if necessary, or the executrix as the life tenant should not desire, upon the advice of the children of the testator to hold it and make other suitable arrangements for the payment of the debts. All the sons of the testator, except the grantee, Weldon Simpson, together with the wives of such of them as were married, united with their mother, the executor, in the deed by which Weldon Simpson was conveyed the land in question, that instrument reciting in substance, that the sale of the land was necessary to pay the debts of the testator and that its sale for that purpose was advised by the sons of the latter.

This action was brought by the appellants, Amanda C. Simpson, William Simpson, Elizabeth Simpson and Louise Simpson, children of John Simpson, the three last named being infants, suing by their mother, Elizabeth Holloway Simpson, as next friend, against Amanda H. Simpson, as executrix of the will of William Simpson, and J. Weldon Simpson, seeking to set aside the sale and

cancel the deed made the latter by the former and her other sons, whereby he was conveyed the 133 acres of land mentioned in the tenth clause of William Simpson's will. The chancellor sustained a general demurrer to the appellants' petition and each of the two paragraphs thereof, and from the judgment so ruling and dismissing the action the latter have appealed.

The averments of the first paragraph of the petition make the claim that although the will of the testator made an absolute bequest of the whole of his personal property to the widow, as it directs the payment of his debts and funeral expenses, by her as executrix and by law the personal property, is liable for his debts, no disposition that might be made of it by the will can relieve it from such liability, in the absence of a provision of that instrument directing the application of the proceeds of the testator's real estate or some of it to the payment of the debts; and, furthermore, that the power conferred on the executrix by the tenth clause of the will to sell, for the payment of the testator's debts, the tract of land therein described could not legally be exercised, unless its sale for that purpose was made necessary by first exhausting the personal property in doing so and finding it insufficient for such purpose, and that as this was not done the necessity for the sale of the land did not arise; therefore, its sale was unauthorized.

The second paragraph of the petition after reiterating, in part, the construction of the will contended for in the first, alleged, in substance, that the widow and executrix by using some of the personal property given her by the will in paying debts of the testator, had elected to so use the whole of it to that end, which estopped her to sell the land to discharge the remaining debts and that her subsequent claim of a necessity for its sale arose out of her antagonism to appellants' mother, Elizabeth Holloway Simpson, and consequent estrangement from them, moved by which and her desire to secure the entire personal estate of the testator for herself and deprive appellants of their remainder interest in the tract of land in question, she conspired with the appellee, Weldon Simpson, to contract with her for its purchase and did by reason thereof, in conjunction with her other sons, sell and convey it to him.

The prayer of the petition asks for a settlement of the accounts of the executrix of Wm. Simpson; that the deed referred to be set aside and the appellants, children of

John Simpson and grandchildren of the testator Wm. Simpson, be adjudged the owners of a one-sixth remainder interest in the land thereby conveyed Weldon Simpson.

The deed by which the land in controversy was conveyed by the appellee, executrix of the will of Wm. Simpson and life tenant of the lands thereby devised, and five of her sons, to the sixth son, the appellee, Weldon Simpson, appears in the record as an exhibit filed with and made a part of the petition. It sets forth the following reasons for its execution by the grantors:

"Whereas, the 10th clause of said will provides and directs the testator's executrix to sell a certain tract of land of about 133 acres, if necessary, for the purpose of paying his debts, funeral expenses and such other charges as may be against his estate, and

"Whereas, each and all of the parties hereto agree that it is necessary to sell said lands for said purposes, now, in consideration of these premises and the further consideration of one dollar and other considerations, paid, by the party of the third part, to the party of the first part, the receipt of which is hereby acknowledged, the parties of the first and second part, do hereby sell, grant and convey unto the party of the third part, his heirs and assigns the following real estate, to-wit: . . . "

To arrive at the meaning of the will here presented for construction, we must endeavor to discover the intention of the testator from the instrument as a whole. If it is explicit and the meaning of its language is involved in no obscurity, rules of construction meant to elucidate, to which the courts are often compelled to resort, cannot be employed. As said in Howard v. Cole, 124 Ky. 816, quoted with approval in the following excerpt from the opinion of the recent case of Fowler v. Mitchell, 170 Ky. 353: "The real question in each case is not what did the testator mean or intend to say, but 'what is meant by what he said?' Courts may frequently be of opinion that he did not intend to say what he did say, but they are not thereby authorized to give to the will any construction other than that which is justified by a fair interpretation of the wording and language of the will itself." Hayman, etc. v. Morgan, etc., 148 Ky. 230; Todd, Gdn. v. Todd's Admr., 155 Ky. 209.

We think the will of Wm. Simpson interprets itself. Manifestly, the language of the second clause: "I give to by beloved wife, Amanda H. Simpson, all of my per-

sonal property whatever it may consist, absolutely," can have but one meaning. Indeed, it seems to be conceded by counsel for appellant that the widow under the language of the second clause of the will took an absolute title to all the personal property left by the testator; and if this is true, no reason is apparent for his contention that such absolute right in her to the personal property bequeathed by that clause is, or could be qualified, or changed to a contingent right, either by the first clause directing the payment of the debts by the executrix, or the tenth clause providing for the sale by her of the land therein described for that purpose, or by the two clauses considered together. It is true that in the absence of the provision made by the tenth clause of the will for other means of paying the debts, the absolute bequest of the personalty to the widow would not have prevented the creditors of the testator from subjecting it to their debts, for this they must have done before proceeding against the real estate for their payment, but we are unable to find that the will confers on the appellants any right to compel the executrix to apply the personal property bequeathed her by the will to the payment of the testator's debts before, and instead of, paying them by a sale of the land as provided by the tenth clause of the will.

It will be observed that in the first clause of the will the testator says: "It is my wish that all my debts and funeral expenses be paid by my executrix hereinafter named, so soon after her qualification as is practicable." But this clause does not declare that the debts shall be paid out of his personal estate; nor does he say in the second clause that "after the payment of my debts, I give unto my beloved wife," etc.; but the language used is: "I give unto my beloved wife, Amanda H. Simpson, all of my personal property (of) whatever it may consist, absolutely." This language as obviously shows it was the intention of the testator that his entire personal estate should go to the widow absolutely at his death, as does that of the third clause his intention that she should take at his death a life estate in all of his lands.

It is not from any declaration of the will to that effect, but by inference alone, that the conclusion can be reached that the testator expected the debts of the estate to be paid out of the personal property bequeathed her as his widow. No command was laid upon the executrix that this be done, but whether it, or any part of it, should be so applied was wholly left to her discretion and to the

advice of the testator's sons when her decision of the matter was made known to them. If she decided, whether before or after, applying any part of the personal estate to the payment of the debts, that she did not wish to retain the life estate given her by the will in the land devised by the tenth clause, but to sell it to pay the debts or what remained of them, and this step was advised by the sons, then and at once the necessity for its sale contemplated by the testator and required by the tenth clause, would and did arise and exist. There is nothing in the will that required this election, if it be called such, to be made by the executrix within a given time, so it could be done at any time before debts of the estate were fully discharged; and the sale of the land devoted by the tenth clause of the will to that object having been made by the executrix, upon the advice of the six sons of the testator and by their joining in the deed, no reason is perceived for attacking the validity of the conveyance.

Its validity is not affected by the fact that it was sold and conveyed to one of the sons, if the transaction was *bona fide;* and of this there can be no doubt, as it is not charged in the petition that there were not debts against the testator's estate which had not been paid at the time the land was sold, nor that the proceeds of the land were not properly applied to the payment of the outstanding indebtedness; nor that the land was sold at an inadequate price.

The charge made in the petition of a conspiracy between the executrix and purchaser in effecting a sale of the land, is refuted by its tacit admission of the facts connected with the sale and the further fact that the father of appellants, who was given by the will control of the land in which they were devised a remainder, advised the sale of the land here involved and joined in the deed to the purchaser. Moreover, there seems to be slight ground for the further charge in the petition that the land in question was sold because of the ill will of the executrix toward appellants and their mother, in view of the admission of that pleading that she gave to the appellant, Amanda C. Simpson, the only adult among her grandchildren suing, what will amount at the death of the grandmother to her share of the surplus left of the proceeds of the land sold after the payment of the debts. This too notwithstanding the law that the whole of such surplus is to be treated as real estate, to the use of which the widow under the will was and is entitled for life.

Being of opinion that the will in question was correctly construed and the demurrer to the petition properly sustained by the court below, the judgment is affirmed.